UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL P. BABIN | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 12-1868 |
| | * | |
| NEW ORLEANS PUBLIC BELT RAILROAD | * | SECTION "L"(2) |
| COMMISSION, D/B/A/ NEW ORLEANS PUBLIC | * | |
| BELT RAILROAD COMPANY | * | |

## ORDER AND REASONS

The Court has received Plaintiff's motion for summary judgment (Rec. Doc. 33) on the issue of liability. The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

**I.     BACKGROUND**

This is a FELA case arising out of injuries to Plaintiff Daniel P. Babin, an employee of Defendant New Orleans Public Belt Railroad Commission. Plaintiff alleges that while working as a railroad conductor for Defendant, he tripped over a radio cord/wire and fell down several steps, sustaining multiple injuries. Plaintiff claims that Defendant was negligent and violated several provisions of the Locomotive Inspection Act ("LIA") and its implementing regulations. In his Amended Complaint, he seeks various damages, including pain and suffering, disability, past and future lost wages, and past medical expenses. (Rec. Doc. 16).

The accident occurred while Plaintiff was working as a conductor. On May 5, 2012, Defendant ordered Plaintiff to take a train, including two locomotives, from Defendant's Cotton Warehouse Yard over the Huey P. Long Bridge and into the Union Pacific railroad yard in

1

Avondale, Louisiana. The plan was for Plaintiff and the locomotive engineer, William Kerry, to use the second locomotive for the return trip. Although Union Pacific owned both locomotives, they were within Defendant's custody and control at the time of the accident.

After reaching Avondale, Plaintiff and Kerry boarded the second locomotive for the return trip. While Kerry was performing air brake tests, Plaintiff got up from his seat to walk toward the locomotive's bathroom located at the bottom of a stairway. (Babin Dep. at 74-75, Rec. Doc. 37-2 at 9-10). At that time, Plaintiff fell and sustained multiple injuries. The parties dispute the cause of those injuries. Plaintiff claims that he tripped over a radio cord when his foot got caught on it. (Babin Dep. at 73, 75-76, Rec. Doc. 33-3 at 16, 18-19). Defendant claims that Plaintiff's fall was the result of his own negligence, citing Kerry's testimony that he did not witness the fall (Kerry Dep. at 16, 26, Rec. Doc. 37-3 at 2, 6) and that Plaintiff did not seem to understand what had happened immediately after the fall (Kerry Dep. at 32, Rec. Doc. 27-3 at 8).

## II.   PRESENT MOTION

Plaintiff moves for summary judgment (Rec. Doc. 33) on the issue of liability. Plaintiff argues that Defendant violated the LIA and its associated regulations. Plaintiff also argues the locomotive was "in use" at the time of his accident, and that the violation caused his injuries. Thus, Plaintiff argues that Defendant is strictly liable under the LIA and negligent *per se* under FELA. Defendant opposes the motion and disputes all of these points, arguing both that the locomotive was not "in use" at the time of the accident and that genuine issues of material fact remain with respect to whether the LIA was violated and whether the alleged violation caused Plaintiff's injuries.

### III.   LAW AND ANALYSIS

#### A.   Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)).  The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Partial summary judgment dismissing only certain claims is appropriate under the same

standards. *See* Fed. R. Civ. P. 56(d).

**B.     FELA and LIA**

Under the Federal Employers Liability Act ("FELA"), "every common carrier by railroad" engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce" as a result of the railroad's negligence. 45 U.S.C. § 51. In order to prevail under FELA, a plaintiff must show: "(1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." *Smith v. Med. & Surgical Clinic Ass'n*, 118 F.3d 416, 419 (5th Cir. 1997) (quoting *Fowler v. Seaboard Coastline R.R. Co.*, 638 F.2d 17, 19 (5th Cir. 1981)).

The Locomotive Inspection Act, or LIA (formerly known as the Boiler Inspection Act), is considered an amendment to FELA, "substantively if not in form." *Urie v. Thompson*, 337 U.S. 163, 189 (1949). The LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts or appurtenances—
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. The LIA "is a safety statute which is to be liberally construed to afford

protection to railroad employees." *Weaver v. Missouri Pac. R. Co.*, 152 F.3d 427, 430 (5th Cir. 1998) (quoting *Gregory v. Missouri Pac. R.R. Co.*, 32 F.3d 160, 161 (5th Cir. 1994); *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993)) (internal quotation marks omitted). Proof of a violation of the LIA "is effective to show negligence [under FELA] as a matter of law." *Id.*; *see also Weaver*, 152 F.3d at 430. Furthermore, an employee's contributory negligence is not a defense under the LIA. *See Lilly v. Grand Trunk W. R. Co.*, 317 U.S. 481, 491 (1943).

However, strict liability under the LIA applies only if a locomotive is "in use" when an accident occurs. *Wright v. Arkansas & Missouri R.R. Co.*, 574 F.3d 612, 620 (8th Cir. 2009); *see also* 49 U.S.C. § 20701 (providing that "use" of a locomotive is permitted only if certain conditions are met); *Trinidad v. S. Pac. Transp. Co.*, 949 F.2d 187, 188 (5th Cir. 1991) (holding same under Safety Appliances Act). If the applicable facts are not in dispute, then the question of whether a locomotive was "in use" at the time of an accident is a question of law for the Court to decide. *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 328 (4th Cir. 1998).

**C.     Analysis**

    **1.     "In Use"**

In order the LIA to apply to this case, the locomotive must have been "in use" at the time of the accident. The parties appear to agree that Plaintiff's accident occurred while Kerry was testing the air brakes of the railcars on the second train. Accordingly, it appears to be uncontested that the second train had not yet been released for the return trip at the time of Plaintiff's accident. However, under the LIA, it is not the status of the train, but the status of the *locomotive* that matters. The parties disagree over whether the *locomotive* was "in use" at the time of the accident.

Three principal cases have interpreted the "in use" provisions of both the LIA and the Safety Appliances Act in similar contexts. First, in *Brady v. Terminal Railroad Association of St. Louis*, 303 U.S. 10 (1938), the plaintiff was injured while a train was "placed on a receiving track temporarily pending the continuance of transportation." *Id.* at 13. At the time of the accident, the train was being inspected for defects, and if found to be defective, it would be removed for repairs. *Id.* Even though the train was not moving at the time of the accident, the Court held that the car was nonetheless "still in use." *Id.* The controlling factor was that the car "had not been withdrawn from use" at the time of the accident. *Id.*

Next, in *Angell v. Chesapeake and Ohio Railway Company*, 618 F.2d 260 (4th Cir. 1980), an employee was injured while in the process of moving two engines to a nearby track, where they would pull a train later that night. *Id.* at 261. While "uncoupling the two engines," the plaintiff "had just turned the air brake exhaust valve prior to separating the air hoses when he was injured by a blast of high pressure air." *Id.* The U.S. Court of Appeals for the Fourth Circuit held that the engine was "in use" at the time that the plaintiff's sustained his injuries. The court emphasized that at the time of the accident, "the engine was not in need of further repair or servicing and, in reality, had been 'okayed' by railway officials for service." *Id.* at 262. The court felt that such activities fell within the purview of the LIA because congressional intent was to hold railroad carriers strictly liable for injuries caused by defective equipment, and to exclude "only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed." *Id.* Thus, the court reasoned that it would be illogical to exclude "activities occurring between servicing and preparing the engine up until the time the engineer takes the controls." *Id.*

Finally, the Fifth Circuit weighed in on a similar issue in *Trinidad v. Southern Pacific Transportation Co.*, 949 F.2d 187 (5th Cir. 1991). In *Trinidad*, the plaintiff was performing a required brake inspection when he found and repaired an air leak in a tank car's brake system. *Id.* at 188. Procedure required that he inform the engineer of the problem, and he was walking across a set of tracks to do so when he was struck by another set of cars. *Id.* In analyzing whether the train was "in use" under the Safety Appliance Act at the time of the plaintiff's injuries, the Fifth Circuit looked to both *Brady* and *Angell* for guidance. The court noted that in *Brady*, the engine had already been "serviced, inspected, and 'okayed' before the accident," and therefore it fell within the purview of the LIA. *Id.* at 189. Similarly, the court noted that in *Angell*, the engine had passed inspection—unlike the tank car at issue in *Trinidad*, which was still undergoing inspection—and that "the *Angell* court distinguished its holding from several decisions that denied coverage to workers *engaged* in the inspection and maintenance of engines." *Id.* The Fifth Circuit noted that this distinction applied to the facts of *Trinidad* as well, since the inspection of the train was not yet complete at the time of the accident. *Id.* Therefore, the court held that the train was not "in use" under the Safety Appliance Act.

Plaintiff analogizes the instant case case to *Angell* and argues that the locomotive was "in use" because Plaintiff's injuries did not result from the repair, inspection, or servicing of the locomotive at a maintenance facility. Plaintiff notes that the locomotive had been inspected before leaving Defendant's yard, and would not be inspected again until after it had returned to Defendant's yard. Plaintiff acknowledges that the railcars making up the train were still undergoing inspection at the time of Plaintiff's accident, but argues that the status of the train must be distinguished from that of the locomotive. Furthermore, Plaintiff emphasizes that at the

time of his injuries, the engines on the locomotive were running, and the train was sitting on the main track. Plaintiff argues that because the locomotive had been okayed for service, and had never been withdrawn from service, it was "in use" under the case law.

Defendant argues that the locomotive was not "in use" because the train was still undergoing inspection at the time of Plaintiff's injuries and had not yet been released for its trip. Essentially, Defendant cites *Trinidad* for the proposition that a train is not "in use" when it "ha[s] not been released following inspection" and "inspection [is] not yet complete." *Trinidad*, 949 F.2d at 189. Defendant argues that under this bright-line test, the Court is required to hold that the LIA does not apply in this case, because the brake test was still in progress when Plaintiff's accident occurred. Plaintiff responds that Defendant's argument is flawed because it fails to distinguish between "locomotives," "trains," and "cars." Plaintiff notes that *Trinidad* arose under the Safety Appliance Act, which involves an inquiry of whether a *train* is "in use," whereas in the instant case, Plaintiff invokes the Locomotive Inspection Act, which requires the Court to determine whether the *locomotive* was in use.

Plaintiff has the better of this argument. An almost identical situation presented itself in *Angell*, a case that *Trinidad* expressly distinguished. As in *Angell*, the locomotive in the instant case had not been removed from service at the time of the accident. Since Plaintiff seeks relief under the LIA, rather than Safety Appliance Act, it is irrelevant that the train was still being inspected and had not yet been released. What is relevant is that the locomotive had already been inspected and okayed and the time of Plaintiff's accident. Therefore, the locomotive in this case was "in use" under the LIA. The Court will grant Plaintiff's motion with respect to the applicability of the LIA.

## 2. Violation of the LIA

Having established that the LIA applies to this case, Plaintiff argues that the record conclusively establishes that Defendant violated the LIA. Plaintiff argues that in addition to violating the LIA's general requirement that a locomotive be "in proper condition and safe to operate without unnecessary danger of personal injury," 49 U.S.C. § 20701, Defendant violated two regulations promulgated under the LIA. The first regulation requires that "[f]loors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard." 49 C.F.R. § 229.119(c). The second requires generally that a locomotive's "systems and components" be "free of conditions that endanger the safety of the crew." *Id.* § 229.45. Plaintiff argues that the radio cord presented a tripping hazard and therefore, the Defendant violated the LIA. As additional support for this argument, Plaintiff cites Kerry's testimony that the radio cord presented a tripping hazard, and the testimony of Frank Shields, Plaintiff's supervisor, that "[i]f something is lying in a walkway, it is a tripping hazard." (Shields Dep. at 44, Rec. Doc. 33-5 at 9).

Defendant responds by arguing that the issue of whether Defendant violated the LIA is too fact dependent for resolution on summary judgment. Defendant notes that in order to prove an LIA violation, Plaintiff must establish not only that the cord was a tripping hazard, but that it presented an "unnecessary danger of personal injury." 49 U.S.C. § 20701(1). Defendant argues that where conflicting evidence exists with respect to whether a condition constituted an unnecessary danger of personal injury, that issue becomes a question for the jury under Fifth Circuit precedent. *Gregory v. Missouri Pac. R. Co.*, 32 F.3d 160, 162-63 (5th Cir. 1994) (holding same under previous statutory language, "unnecessary peril to life or limb"). Defendant argues

that in this case, issues of genuine material fact remain with respect to whether the cord actually presented an unnecessarily dangerous tripping hazard. For example, Defendant argues that Plaintiff testified that the cord was visible and not hidden, potentially reducing the level of "unnecessary danger" it posed. (Babin Dep. at 77, Rec. Doc. 37-2 at 12). Furthermore, Defendant cites Shields' testimony that the cord would not be a hazard if it were lying against a wall or out of the way (Shields Dep. at 50 Rec. Doc. 37-4 at 12), a possibility that does not appear to be controverted by any of Plaintiff's cited evidence.

As Defendant argues, the question of whether the cord presented an "unnecessary danger of personal injury" is too fact dependent for disposition on summary judgment. The Court will deny Plaintiff's motion with respect to whether Defendant violated the LIA.

### 3. Causation

Plaintiff also argues that there is no genuine issue of material fact with respect to the causation of Plaintiff's injuries. Plaintiff claims that his fall resulted from his having tripped over the radio cord, and cites his own deposition testimony (Babin Dep. at 73, 75-76, Rec. Doc. 33-3 at 16, 18-19), as well as photographs of the cord (Rec. Doc. 33-8), in support of that assertion. Defendant does not appear to dispute that Plaintiff fell, but Defendant does dispute the cause of the fall, arguing that Plaintiff merely tripped. In support of this assertion, Defendant cites Kerry's testimony that he did not see the fall and that immediately after the fall, Plaintiff appeared not to understand what had happened. (Kerry Dep. at 16, 26, 32, Rec. Doc. 37-3 at 2, 6, 8). Additionally, Defendant cites Plaintiff's testimony suggesting that he is unsure how his foot went into the cord, and stating that the radio handset was still connected after his fall. (Babin Dep. at 83, 84-85, Rec. Doc. 37-2 at 16, 17-18).

This is a pure factual dispute that must be reserved for the factfinder at trial. If Defendant violated the LIA, then Defendant is liable as long as the tripping hazard actually caused Plaintiff's fall. Determining the actual cause of Plaintiff's fall will be a question of credibility. The Court will deny Plaintiff's motion with respect to causation.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Plaintiff's motion is GRANTED with respect to the issue of whether the locomotive was "in use" at the time of the incident, but DENIED with respect to the issues of whether the LIA was violated and whether the alleged violation caused the Plaintiff's injuries.

New Orleans, Louisiana, this 1st day of May, 2013.

_____
UNITED STATES DISTRICT JUDGE